UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER R. BINNING,<br><br>Plaintiff,<br><br>v.<br><br>LOUISVILLE LADDER, INC.; and DOES 1-50, inclusive,<br><br>Defendants. | No. 2:11-cv-03058-MCE-CKD<br><br><br>**MEMORANDUM AND ORDER** |

In this product liability case, Defendant Louisville Ladder, Inc. ("Louisville") moves for summary judgment, or alternatively for summary adjudication, on grounds that Plaintiff has failed to proffer sufficient evidence to support his claims. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1441(b). As set forth below, Louisville's Motion is GRANTED.[1]

///
///
///
///
///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local R. 230(g).

1

## BACKGROUND

On June 16, 2009, Plaintiff Christopher Binning ("Plaintiff") was injured while installing a steel rolling curtain overhead door at a residence located in Groveland, California. Def.'s Statement of Undisputed Fact ("SUF") No. 4. Plaintiff was working as an overhead door installer for Barton Overhead Door, Inc. Id. at No. 1. In that capacity, he used ladders every day and considered himself an experienced ladder user. Id. at No. 2.

The door being installed by Plaintiff and his fellow installer, Tom Oliva, on the day of the incident was a Janus Model 2000 door which measured some 8 feet tall by 9 feet wide and weighed approximately 90 pounds. Id. at 9. In performing the installation, Plaintiff was using a 6 foot fiberglass step ladder manufacturer by Louisville that he had used without incident every day for about a year and a half. Id. at 5-6. It is undisputed that Plaintiff realized that installing overhead doors could be dangerous. Id. at No. 3.

In preparing to place the door, Plaintiff and Oliva installed "L-brackets" on either side of the door opening from which to hang the steel curtain door. Id. at No. 8. After affixing those brackets, both Plaintiff and Oliva positioned their ladders on either side of the door opening so that the door could be lifted onto the brackets. Id. at No. 10. Once they lifted the door such that it was sitting on the top of both ladders, Plaintiff climbed to the third step of the ladder and both men picked up the door so that they could it hoist it to the brackets. Id. at 12-13. Plaintiff was not holding on to the ladder as he lifted the door forward to a point about three feet above the top of the ladder and approximately six inches over his head in order to access the brackets. Pl.'s Dep., Ex. A. to the Decl. of Jonathan R. Murphy in Support of Summ J., 62:22-63:25. According to Plaintiff, he was looking up at the brackets where the door was going to be placed when he felt the door "give way." Id. at 15-16. As the ladder tipped, Plaintiff went left and the ladder went right, towards the door opening. Id. at 17. He grabbed the truss to the left of the door opening with his left arm, and remained suspended in that manner until Oliva helped him

1  down.  Id. at 20.  Neither Plaintiff nor Oliva observed the ladder "break."  Id. at 16.
2  Plaintiff also did not see whether the steel door hit the ladder as both items fell to the
3  ground.  Pl.'s Dep., 17:4-6.
4       After the incident, Plaintiff observed that one of the legs of the ladder was bent,
5  and a support brace was broken.  Id. at 21.  Plaintiff claims to have suffered a separated
6  shoulder as a result of the accident and filed suit in state court on June 14, 2011,
7  alleging causes of action for strict product liability, negligence, and breach of implied
8  warranty.  As indicated above, Louisville subsequently removed the action to this Court
9  on diversity grounds.
10      Plaintiff propounded no discovery on Louisville before the discovery period
11 closed.  Nor did he designate any expert witness to opine with regard to any alleged
12 defects in the ladder that caused or contributed to the accident.  Louisville, for its part,
13 designated Thomas Schmitt, its Director of Product Safety and Engineering, as an expert
14 witness.  Schmidt inspected the damage to the ladder at the accident site on June 25,
15 2013, and subsequently prepared an expert report dated November 17, 2013.  See
16 Report, Ex. 1 to Louisville's Expert Witness Disclosure, Ex. E to Murphy Decl.  Schmitt
17 noted that one of the ladder's rear legs had bent inward, causing a support brace to
18 snap.  He opined that this damage could not have occurred during normal use of the
19 ladder, when any force exerted is transferred down the rails and to the ground, without
20 any lateral force exerted on the ladder's legs.  Id. at 38-39.  Instead, according to
21 Schmitt, the damage he observed could only have resulted from a force striking the
22 outside of the rear leg of the ladder, such as the overhead door falling on the ladder as it
23 tipped and fell forward towards the door opening.  Id. at 40.
24      Louisville now moves for summary judgment, or alternatively for summary
25 adjudication as to Plaintiff's various claims, on grounds that Plaintiff has failed to identify
26 any triable issues of material fact to counter Louisville's showing that the accident was
27 not caused by any design defect.
28 ///

## STANDARD

The Federal Rules of Civil Procedure[2] provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in

---

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise indicated.

4

1 the record, including depositions, documents, electronically stored information,
2 affidavits[,] or declarations . . . or other materials; or showing that the materials cited do
3 not establish the absence or presence of a genuine dispute, or that an adverse party
4 cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The
5 opposing party must demonstrate that the fact in contention is material, i.e., a fact that
6 might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby,
7 Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and
8 Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also
9 demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is
10 such that a reasonable jury could return a verdict for the nonmoving party." Anderson,
11 477 U.S. at 248. In other words, the judge needs to answer the preliminary question
12 before the evidence is left to the jury of "not whether there is literally no evidence, but
13 whether there is any upon which a jury could properly proceed to find a verdict for the
14 party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251
15 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).
16 As the Supreme Court explained, "[w]hen the moving party has carried its burden under
17 Rule [56(a)], its opponent must do more than simply show that there is some
18 metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore,
19 "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
20 nonmoving party, there is no 'genuine issue for trial.'" Id. 87.
21     In resolving a summary judgment motion, the evidence of the opposing party is to
22 be believed, and all reasonable inferences that may be drawn from the facts placed
23 before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at
24 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
25 obligation to produce a factual predicate from which the inference may be drawn.
26 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,
27 810 F.2d 898 (9th Cir. 1987).
28 ///

**ANALYSIS**

Federal district courts sitting in diversity, as this Court does here, apply state law to product liability claims. Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1193-94 (9th Cir. 2007). Plaintiff's complaint in this matter is specifically denominated as a products liability action (Pl.'s Compl, ECF No. 1-1). As stated above, the complaint includes claims for strict product liability, negligence and breach of implied warranty, all stemming from an alleged defect in the ladder manufactured by Defendant and being used by Plaintiff at the time the subject accident occurred.

To succeed on any strict product liability claim under California law, a plaintiff must prove: (1) that the product was defective; and 2) that the defect existed when the product left the hands of the manufacturer. Daly v. General Motors Corp., 20 Cal. 3d 725, 758 n.1 (1978). A negligence claim rooted in products liability must include, along with the two elements discussed above, an additional element that the product defect was due to the defendant's negligence. Id. In addition to establishing the defective nature of the product, Plaintiff must also show a substantial probability that the design defect, and not something else, caused the plaintiff's injury. Stephen v. Ford Motor Co., 134 Cal. App. 4th 1363, 1373 (2005). In the absence of such a showing, Plaintiff's product liability claims, whether premised on strict liability or negligence, fail. Daly, 20 Cal. 3d at 758 n.1; Stephen, 134 Cal. App. 4th 1373; see also Merrill v. Navegar, Inc., 26 Cal. 4th 465, 479 (2001) (product liability under a negligence theory requires proof of both defect and causation).

With respect to strict liability in particular, California law allows a plaintiff to recover only when "there is something 'wrong' with a product's design." Barker v. Lull Engineering Co., Inc., 20 Cal. 3d 413, 432 (1978). This standard prevents a manufacturer from Louisville from becoming the "insurer of all injuries which may result from use of its product." Id. A plaintiff can therefore not recover under a product defect theory "simply because an accident has occurred." Henderson v. Harnischfeger Corp.,

6

12 Cal. 3d 663, 676 (1974).  Nor is a manufacturer strictly liable merely because use of its product carries some risk of harm.  Id.  Instead, plaintiff must identify evidence that he was injured due to a defect in the product.  Milwaukee Elec. Tool Corp. v. Superior Court, 15 Cal. App. 4th 547, 556 (1993).

Plaintiff's claim fails on the first prerequisite for establishing a products liability and/or negligence claim, as enumerated above.  Plaintiff concedes he has no factual basis to support a defect theory against Louisville in any manner, whether through mandatory Rule 26 disclosures, by way of interrogatory responses, or otherwise.  PUF No. 36.  It is further undisputed that Plaintiff has hired no expert to opine with regard to any alleged defect in the Louisville ladder.  Id. at No. 26.  Instead, Plaintiff indicates only that he wants to reopen expert discovery, since he "may now be able to hire an expert."  See Pl.'s Response to PUF No. 26.  Plaintiff further states that he may be able to prove his case "partially through cross-examination of Defendant's Expert Witness."  Id.

First, with respect to Plaintiff's ostensible claim that he be permitted to reopen expert discovery, the time for seeking such relief on a timely basis has long since passed.  The Amended Pretrial Scheduling Order ("PTSO") in this matter, filed nearly a year and a half ago on March 19, 2013, established a fact discovery deadline of October 4, 2013, to be followed by the designation of expert witnesses by December 4, 2013.  ECF No. 22.  The instant motion for summary judgment was filed in accordance with the April 3, 2014 deadline for hearing dispositive motions.  Id.  Plaintiff's request to reopen expert discovery therefore comes at a point some four and a half months after expert designations were supposed to have been made, and was only made after Louisville's motion for summary judgment had already been filed.  Moreover, Plaintiff's request comes at a time when the case only awaits the Final Pretrial Conference and trial itself.  Plaintiff has demonstrated no good cause to excuse his compliance with the above enumerated disclosure deadlines aside from speculating that he "may now be able to borrow some money to hire an expert."  Such speculation, without more, is plainly

///

7

1  insufficient to justify the significant deviation from long-expired deadlines that Plaintiff
2  now appears to request.
3       Even more significantly, however, Plaintiff has failed to point to any likelihood that
4  a renewed opportunity to seek an expert opinion would produce any evidence sufficient
5  to meet his burden in opposing summary judgment in any event.  As set forth above, the
6  Supreme Court has made it clear that to meet this burden, Plaintiff must do more than
7  simply show that there is some metaphysical doubt as to the material facts." Matsushita,
8  475 U.S. at 586.
9       The defense expert, Thomas Schmitt, makes a strong case in his marshaling of
10 evidence pointing to the propriety of granting summary judgment in Louisville's favor.
11 First, Mr. Schmitt's report points out that the subject ladder's design met all applicable
12 specifications for fiberglass stepladders set forth by the American National Standards
13 Institute ("ANSI').  Schmitt Report, p. 12.  Schmitt also found that the ladder met all
14 federal and state Occupational Safety and Health Administration ("OSHA") standards as
15 well, explaining that OSHA recognizes the ANSI standards as the national consensus
16 safety standards for ladders.  Id.  While Plaintiff argues that compliance with these
17 standards "does not guarantee there will not be defects in the subject ladder," the law is
18 clear that evidence of industry safety standards is relevant in a product liability action.  In
19 Howard v. Omni Hotels Mgmt. Corp., 203 Cal. App.4th 403, the plaintiff slipped and fell
20 in a bathtub while staying at the Omni Hotel.  Plaintiff sued Kohler, the manufacturer of
21 the bathtub, on theories of both negligence and strict liability.  In support of its motion for
22 summary Judgment, Kohler proffered evidence showing that the tub complied with
23 applicable industry safety standards on grounds that such compliance met Kohler's initial
24 burden in moving for summary judgment.  The trial court considered those standards
25 and entered summary judgment in Kohler's favor.  On appeal, the plaintiff argued that
26 the court erred in considering such standards.  In rejecting that argument, the California
27 Court of Appeals confirmed that industry standards were indeed relevant on the issue of
28 design defect:

8

> [E]xpert evidence about compliance with industry standards can be considered on the issue of defective design, in light of all other relevant circumstances, even if such compliance is not a complete defense.

Id. at 426.

Howard further makes it clear that industry standards are also relevant in a product liability action where negligence on the part of the manufacturer is also alleged, as Plaintiff asserts here:

> In negligence and due care determinations, a manufacturer's compliance with regulations, directives or trade custom does not necessarily eliminate negligence but instead simply constitutes evidence for jury consideration with other facts and circumstances.

Id. at 420-21.

Consequently, evidence of such compliance, as Mr. Schmitt outlines in his expert report, is indeed relevant both with respect to Plaintiff's strict liability and negligence claims rooted in products liability and asserted against Louisville.  More important, however, is evidence that the ladder in question had a design defect and that said defect was the cause of Plaintiff's injury.  As set forth above, Plaintiff has to counter Louisville's claim that no such defect was present, and that it was Plaintiff's own conduct that caused the ladder to fall as opposed to any design shortcoming on Louisville's part in making the ladder.

Plaintiff cannot meet this burden.  Mr. Schmitt's report is unequivocal that the ladder failure suggested by Plaintiff, an inward bend of one of the ladder's rear legs, is impossible during normal use of the ladder since it is inconsistent with basic principles of physics.  Instead, as Schmitt explains, the damage which occurred to the ladder could only have resulted from a force striking the outside of the rear leg of the ladder as it fell, such as the overhead door which Plaintiff pushed outwards towards the garage door opening, in the same direction the ladder fell.  Schmitt's report states as follows:

///

///

> The damage and physical evidence on the subject ladder is consistent with lateral opposing forces acting to force the left and right rails together while the ladder was tipping over towards a horizontal position. In other words, the damage is consistent with the ladder tipping over and an object striking the ladder during the fall. In this case, the most likely generator of this lateral force, based on the incident described by Mr. Binning, is the garage door itself, which fell when Mr. Binning reached to grab the bracket on the header. The damage on the subject ladder is not consistent with the ladder being loaded during normal or even abusive use while the ladder is in an upright orientation with all four legs on the grounds.
>
> Mr. Binning's fall was not caused by the ladder structure buckling, bending, collapsing of "giving way" while he was on it. Basic principles of physics demonstrate that no force can be generated during normal set up and use of the ladder which would cause an inward deformation of the back rails or an upward deformation of the cross brace. Instead, description of the accident suggests that Mr. Binning, without having any one of his hands on the ladder, failed to keep his weight centered between the rails, causing him to lose his balance and tip the ladder over to the right, while his body moved to the left. This fall dislodged the overhead door from his right hand and Mr. Oliva's left hand, causing the door to strike the rail of the ladder before contacting the ground.

Schmitt Report, Ex.t 1 to Defendant Louisville's Expert Disclosures, p. 12, attached as Ex. E to the Murphy Decl.

As already indicated, Plaintiff concedes he has no evidence to discount Mr. Schmitt's conclusion that the Louisville ladder being used by Plaintiff was not defective in design. See Pl.'s Response to SUF No. 36, 26. Aside from indicating that he "may be requesting that expert discovery be reopened," a request the Court has already considered and rejected above, Plaintiff states only vaguely that he "plans on proving his case partially during cross-examination" of Mr. Schmitt. Id. at No. 26. That statement is not evidence, however, and provides no clue on even how Plaintiff intends to discredit Mr. Schmitt's opinion. It is not sufficient to meet Plaintiff's burden in opposing Defendant's request for summary judgment on the basis of the Schmitt report. To meet that burden and show that a triable issue of fact exists with regard to defective design, expert testimony is required. Howard, 203 Cal. App. 4th at 426. Expert testimony is also required to establish causation and to rebut Schmitt's conclusion that

1  no design defect caused Plaintiff's injury. <u>Stephen</u>, 134 Cal. App. 4th at 1373. Plaintiff
2  has failed to disclose any expert to provide such testimony and, as discussed above,
3  offers no clue as to how an expert could discount Mr. Schmitt's opinion were one to be
4  retained and permitted to testify. Significantly, too, it is undisputed that Plaintiff did not
5  initiate any discovery directed towards Louisville before the discovery period closed. He
6  did not serve written discovery requests, did not depose any Louisville representative,
7  and has disclosed no factual basis to support a defect theory in his mandatory Rule 26
8  disclosures, in responses to written interrogatories served by Louisville, or in any other
9  manner. Def.'s SUF Nos. 27, 36.

10        The only specific factual averment made by Plaintiff is that had the door fallen on
11  the ladder, "there would have been visible scratches, dents, or cuts in the ladder at the
12  site where the ladder snapped apart." Opp'n, 2:19-21.[3] That argument, however, fails
13  to present any triable issue of fact. Examination of numerous photographs taken by
14  Mr. Schmitt of the damaged areas of the ladder in fact reveal numerous scratches, dents
15  and cuts in the damaged areas, such that impact from the steel door would not
16  necessarily be discernible from other marks made during normal use of a ladder utilized
17  by Mr. Binning on a daily basis for about a year and a half before the accident. <u>See</u>
18  photographs attached as Ex. D. to the Murphy Decl.' <u>see</u> <u>also</u> Pl.'s Response to SUF
19  No. 6.

20        Plaintiff concedes that he climbed to the third step of the ladder before lifting the
21  door in tandem with Tom Oliva onto a bracket where the door would hang. In order to
22  execute this maneuver, Plaintiff had to hold the door over his head and was not holding
23  onto the ladder when he felt it "give way." Plaintiff was looking up at the bracket, where
24  the door was going to be placed, when this happened, and neither Plaintiff nor Mr. Oliva
25  were looking at the ladder. Aside from speculating that something, other than the
26  danger implicit in lifting a 90 pound door over Plaintiff's head without hanging on to the

---

[3] While Plaintiff also claims that both Plaintiff and his work partner, Mr. Oliva, testified that "the door did not land on the ladder," that does not contradict Mr. Schmitt's claim that the door struck the ladder as both items were falling.

11

1  ladder, caused the ladder to tip over, Plaintiff cannot point to any evidence that it was the
2  ladder as opposed to the dangerousness of his own conduct that caused the accident.
3        Given all of the above, Plaintiff has not met his burden of coming forward with
4  "specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at
5  587. Summary judgment in Louisville's favor is therefore appropriate as to Plaintiff's
6  product liability claims premised on strict liability and in negligence.
7        While Plaintiff also alleges one additional claim for breach of implied warranty, the
8  elements of that claim under California law also include a requirement that the quality of
9  the product, here Louisville's ladder, "was a substantial factor in causing [Plaintiff's]
10 harm. Judicial Council of California Civil Jury Instructions ("CACI") 2013, No. 1231.
11 Because Plaintiff's breach of implied warranty also contains a claim that a quality defect
12 "caused" Plaintiff's harm, the same causation requirement discussed above with regard
13 to the strict product liability and negligence claims also bars that claim. Additionally, in
14 order to bring an action for implied warranty under California law, the general rule is that
15 privity of contract is required. In order to establish such privity, the aggrieved consumer,
16 here Plaintiff, must have purchased the product directly from the manufacturer. See All
17 west Electronics, Inc. v. M-B-W, Inc., et al., 64 Cal. App. 4th 717, 725 (1998); Blanco v.
18 Baxter Healthcare Corp., 158 Cal. App. 4th 1039, 1058-59 (2008). It is undisputed that
19 Plaintiff's employer, Barton Overhead Doors, purchased the ladder involved in the
20 subject accident, and not Plaintiff. SUF No. 42. Plaintiff therefore lacks privity and his
21 breach of implied warranty fails as a matter of law on that basis. Significantly, Plaintiff
22 does not appear to oppose Louisville's request for summary adjudication as to the
23 implied warranty claim in any event.
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

Based on the foregoing, Plaintiff has failed to rebut Defendant Louisville's prima facie showing that it is entitled to judgment as a matter of law given the undisputed facts of this matter. In attempting to meet that burden, Plaintiff offers no more than unsubstantiated assumptions not backed by any evidence sufficient to create a triable issue of fact. Plaintiff admits that he has done no discovery or obtained any expert opinion pointing to any such evidence. Louisville's Motion for Summary Judgment (ECF No. 23) is thus GRANTED. The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: August 27, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT